David James DOPPLER, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A08–1782.

Supreme Court of Minnesota.

Sept. 10, 2009.

Deborah Ellis, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN, Donald F. Ryan, Crow Wing County Attorney, Brainerd, MN, for respondent.

## OPINION

DIETZEN, Justice.

In June 1996, appellant David Doppler was found guilty of first-degree premeditated murder for the shooting death of Michael L. Sargent. Appellant filed a direct appeal and requested that the case be remanded to consider his postconviction petition that his trial counsel was ineffective. Following an evidentiary hearing, the district court denied the petition. On appeal, we affirmed the conviction and the denial of the postconviction petition. *State v. Doppler (Doppler I )*, 590 N.W.2d 627, 629 (Minn.1999). In March 2001, appellant filed a second petition alleging ineffective assistance of appellate counsel. The postconviction court denied appellant's petition, concluding that his claim was procedurally barred. We affirmed. *Doppler v. State (Doppler II )*, 660 N.W.2d 797, 803–04 (Minn.2003). In August 2007, appellant filed a third petition for postconviction relief alleging newly-discovered evidence and other claims. Following an evidentiary hearing, the postconviction court denied the petition for postconviction relief. This appeal followed. We affirm.

The facts underlying appellant's conviction are set forth in detail in *Doppler I,* 590 N.W.2d at 629–32. Briefly, Sargent's body was found in April 1995 near an access road to Little Blackhoof Lake in Crow Wing County. Sargent's body had sustained four gunshot wounds—one to the right leg, one to the chin, and two to the head. An extensive investigation led the police to appellant. During an interview with agents from the Bureau of Criminal Apprehension (BCA), appellant confessed to shooting Sargent. Appellant reiterated his confession at trial and added some additional detail, testifying that he had shot Sargent after Sargent came at him

with a knife. Also testifying at trial were Keith Doppler (appellant's brother) and Richard Berry (appellant's uncle). They were present when Sargent was killed and corroborated appellant's version of the shooting. Subsequently, a jury convicted appellant of premeditated first-degree murder in violation of Minn.Stat. § 609.185(a)(1) (2008).

In *Doppler I*, we considered appellant's direct appeal in which he alleged that the evidence was insufficient to support his first-degree murder conviction. *Doppler I*, 590 N.W.2d at 635. We also considered the postconviction court's denial of appellant's first petition for postconviction relief alleging ineffective assistance of trial counsel on the grounds that counsel failed to: (1) object to the grand jury indictment; (2) present evidence of appellant's intoxication; and (3) request a jury instruction on intoxication. *Id.* at 633–35. We affirmed the conviction on the basis that the evidence was sufficient to support the jury's verdict and affirmed the postconviction court on the ground that appellant failed to establish that his trial counsel was ineffective. *Id.* at 634–36.

In March 2001, Doppler filed a second petition for postconviction relief, which alleged ineffective assistance of appellate counsel. *Doppler II*, 660 N.W.2d at 800. The claim was predicated on appellate counsel's failure to raise on appeal trial counsel's decision to not call three witnesses—Dr. John Plunkett, an expert witness who could have supported appellant's self-defense claim, and Rhonda and Scott Hanestad, who would have testified as to Sargent's propensity for violence. *Id.* Doppler, his mother, and his brother testified at the hearing. *Id.* Subsequently, Doppler filed a motion to reopen the record to allow Plunkett to testify. *Id.* The

postconviction court denied both the motion to reopen and the petition for postconviction relief, concluding that the ineffective assistance of appellate counsel claim was procedurally barred. *Id.* at 800–01.

On appeal, we affirmed the denial of the second petition, holding that the ineffective assistance of appellate counsel claim was procedurally barred. *Id.* at 803–04. We concluded that the second postconviction court's finding that at the time of his direct appeal Doppler knew of the basis for his ineffective assistance of appellate counsel claim was supported by the record. *Id.* at 802. Specifically, Doppler admitted that on several occasions before the first postconviction hearing and before the direct appeal that he expressed to his appellate counsel his desire to contest trial counsel's failure to call the witnesses. *Id.*

In his third petition, which is the subject of this appeal, appellant claimed to the postconviction court that: (1) the confession he provided to the police should have been excluded at trial; (2) his intoxication on the night of the shooting inhibited his ability to describe the events of the night of the shooting; and (3) he was entitled to a new trial based on newly-discovered evidence. Appellant submitted affidavits of Albert Logan, Rhonda Hanestad, Heather Doppler, and Josh Doppler. The postconviction court denied the first two claims on the grounds that they were procedurally barred and granted appellant's request for an evidentiary hearing to consider the testimony of Heather and Josh Doppler but not Albert Logan or Rhonda Hanestad.

At the evidentiary hearing, Heather and Josh Doppler testified. Heather testified that she met Keith Doppler, appellant's brother, in the summer of 2002 and that they were married in 2003. They separated in December 2005 and divorced in June

2007.[1] She testified that in November 2002, Keith told her he felt bad that his brother was in jail for something Keith did, that "if [Keith] wouldn't have reached under the seat, none of this would have happened," and if Keith hadn't given David "all the drugs," but then would not say more. Heather noticed that when he said these things, he was "hollow" and "showed no emotions." She admitted that Keith used drugs, that Keith had a history of fabricating things, and that she did not know if he was making an admission or not.

Josh Doppler, who is a cousin to David and Keith Doppler, testified that he asked Keith at a social gathering in 1998 or 1999 about what happened the night of the murder. According to Josh, Keith told him privately "that there was a lot more to the story than everybody knew," and that David did not kill Sargent; rather, Keith was the one who did. Josh admitted that Keith was a known braggart and not always truthful.

Following the hearing, the postconviction court denied the petition concluding, among other things, that the court was "not convinced that the trial testimony of Keith Doppler was false," and that the testimony of Heather and Josh Doppler did not meet the requirements for a new trial based on newly-discovered evidence. This appeal followed.

I.

Appellant argues that the postconviction court erred in denying his claim for postconviction relief. He contends that the court erred in denying his request for an evidentiary hearing to consider the testimony of Logan and Hanestad on the grounds that it did not constitute newly-discovered evidence and was procedurally barred.

 We review the denial of a postconviction evidentiary hearing for an abuse of discretion. *Ferguson v. State,* 645 N.W.2d 437, 446 (Minn.2002). An evidentiary hearing is required " 'whenever material facts are in dispute that ... must be resolved in order to determine the issues raised on the merits.' " *Id.* (quoting *Hodgson v. State,* 540 N.W.2d 515, 517 (Minn. 1995)). In other words, "[a]n evidentiary hearing is required 'unless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief.' " *Hooper v. State,* 680 N.W.2d 89, 92 (Minn.2004) (quoting Minn. Stat. § 590.04, subd. 1 (2002)). To warrant an evidentiary hearing, the petitioner must allege facts that, if proved, would entitle him or her to the requested relief. *State v. Kelly,* 535 N.W.2d 345, 347 (Minn. 1995). The allegations must be "more than argumentative assertions without factual support." *Ferguson,* 645 N.W.2d at 446 (citation omitted) (internal quotation marks omitted). Any doubts about whether an evidentiary hearing is necessary should be resolved in favor of the party requesting the hearing. *State ex rel. Roy v. Tahash,* 277 Minn. 238, 244, 152 N.W.2d 301, 305 (1967).

 To receive a new trial based on newly-discovered evidence, a petitioner must show:

(1) that the evidence was not known to the defendant or his/her counsel at the

1. Subsequent to the divorce, Heather Doppler changed her name to Heather Schultz. Her affidavit is signed Heather Doppler, but the parties and the postconviction court refer to her as Heather Schultz.

time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result.

*Rainer v. State,* 566 N.W.2d 692, 695 (Minn.1997).

■■■ But when newly-discovered evidence is in the nature of a recantation by a witness who testified at trial, we apply the three-prong *Larrison* test. *Pippitt v. State,* 737 N.W.2d 221, 226 (Minn.2007) (citing *Larrison v. United States,* 24 F.2d 82, 87–88 (7th Cir.1928), *overruled by United States v. Mitrione,* 357 F.3d 712, 718 (7th Cir.2004)). Under the *Larrison* test, when deciding whether to grant petitioner's request for a new trial based on recanted testimony, the postconviction court should consider three factors: (1) whether the court is "reasonably well-satisfied" that the trial testimony was false; (2) whether "without that testimony the jury might have reached a different conclusion"; and (3) whether "the petitioner was taken by surprise at trial or did not know of the falsity until after trial." *Opsahl v. State,* 677 N.W.2d 414, 423 (Minn. 2004). The third prong of the test is not a condition precedent for granting a new trial, but rather a factor the court should consider in making its determination. *See id.*

### A. Logan and Hanestad Affidavits

We review first the postconviction court's decision denying an evidentiary hearing to consider the testimony of Albert Logan and Rhonda Hanestad. It is undisputed that Logan, a long-time friend of Doppler, testified at trial, and therefore the *Larrison* test is applicable. The post-

conviction court was not satisfied that Logan's trial testimony was false, or had Logan not testified that the jury would have reached a different conclusion; therefore, the first two prongs of the *Larrison* test were not met. *See Opsahl,* 677 N.W.2d at 423.

Logan, who was not present when Sargent was killed, testified regarding two conversations he had with Doppler. *Doppler I,* 590 N.W.2d at 631–32. First, Logan testified that before Sargent's death, Doppler told him that he would like to kill Sargent, but Logan did not take it seriously. *Id.* at 632. Also, Logan stated that after Sargent's death, Doppler told him that he "had something to do with" it. *Id.* Logan also testified that he did not make any deals with the State in order to have the indictment against him for his role in the death of Sargent dismissed.

Subsequently, Logan stated in his affidavit to the postconviction court that "I told the prosecutor and the BCA agents what they wanted to hear to avoid getting a life sentence." Logan also stated that "I know that David Doppler did not kill Mike Sargent." The postconviction court concluded that Logan's affidavit did not clearly recant his trial testimony or state that his trial testimony was false. Because Logan was not an eyewitness, the court determined that it was unlikely that the jury would have reached a different conclusion without Logan's trial testimony. Thus, the court concluded that Logan's affidavit did not merit an evidentiary hearing.

■■ We conclude that even without Logan's testimony, it is unlikely the jury would have acquitted appellant. Doppler confessed that he killed Sargent, that he intended to do so, and he did not dispute that part of his confession at trial. *Dop-*

*pler I,* 590 N.W.2d at 629, 631. Richard Berry and Keith Doppler, the only other persons at the scene on the night Sargent was killed, also did not dispute that Doppler killed Sargent. *Id.* at 629–31. The prosecution also presented evidence at trial that Doppler had a motive to kill Sargent and took the step of purchasing the gun that was used to kill Sargent. *Id.* at 631. Doppler was angry with Sargent for getting his brother, Keith, involved with drugs and threatening, in front of Doppler's nieces, to kill Keith. *Id.* at 629. Thus, we conclude that the postconviction court did not abuse its discretion in denying appellant's request for an evidentiary hearing based on Logan's affidavit. *See State v. Turnage,* 729 N.W.2d 593, 599 (Minn.2007) (stating that the question under the second prong of *Larrison* is whether the jury might have found the defendant not guilty if the recanting witness had not testified).[2]

■■■■ Rhonda Hanestad's affidavit alleged that around the time of Sargent's death she saw Keith Doppler throw items belonging to Sargent off a bridge and that Keith threatened to kill her if she revealed the incident to anyone. The postconviction court concluded that the new evidence claim based on Hanestad's affidavit was *Knaffla*-barred. When a direct appeal has been taken, all claims that were raised or could have been raised will not be considered in a petition for postconviction relief. *Buggs v. State,* 734 N.W.2d 272, 274 (Minn. 2007); *State v. Knaffla,* 309 Minn. 246, 252,

243 N.W.2d 737, 741 (1976). Similarly, our *Knaffla* rule bars claims that were raised or could have been raised in an earlier postconviction petition. *Powers v. State,* 731 N.W.2d 499, 501 (Minn.2007). There are two exceptions to the *Knaffla* rule: (1) if the claim's novelty was so great that its legal basis was not reasonably available when direct appeal was taken; and (2) when fairness so requires and when the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. *Sanchez–Diaz v. State,* 758 N.W.2d 843, 846–47 (Minn.2008).

In his second postconviction petition, appellant asserted that trial counsel was ineffective for failing to call Hanestad to testify. *See Doppler II,* 660 N.W.2d at 800. The postconviction court denied the claim and we affirmed. *Id.* at 800–01, 803–04. Because the record indicates that at the time of petitioner's second postconviction petition he was aware of grand jury testimony by Hanestad implicating Keith Doppler in Sargent's murder, appellant's claim of newly-discovered evidence based on Hanestad's statements concerning Keith Doppler's guilt is *Knaffla*-barred.

**B. Heather and Josh Doppler Affidavits and Testimony**

■■■■ Appellant next contends that the testimony and affidavits of Heather and Josh Doppler constitute newly-discovered evidence requiring a new trial. Specifically, appellant argues that the hearing testimony of Heather and Josh Doppler re-

---

**2.** The dissent contends that Logan's statement "I know that David Doppler did not kill Mike Sargent" warrants an evidentiary hearing. But as the dissent acknowledges, this statement is at best a "bare bones" assertion of petitioner's innocence. And as we stated in *Ferguson,* an allegation must be more than just an argumentative assertion to warrant an

evidentiary hearing. *See Ferguson,* 645 N.W.2d at 446. It must be supported by facts that, if proved, would entitle the petitioner to the requested relief. *Id.* Logan's assertion of petitioner's innocence is unsupported by any facts. It does not by itself warrant an evidentiary hearing on Logan's affidavit.

solves the inconsistencies between the trial testimony and the physical evidence presented at appellant's trial. The State contends that the evidence submitted by appellant does not warrant a new trial based on newly-discovered evidence.

The affidavit and hearing testimony of Heather and Josh Doppler focused on statements that Keith Doppler made separately to each of them. The postconviction court analyzed Heather's affidavit and testimony under the *Rainer* and *Larrison* tests. Under the *Rainer* test, the court concluded that appellant failed to establish that Keith's statements to Heather were not cumulative, impeaching, or doubtful. *See Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997). Instead, the court found that Keith's statements to Heather were "doubtful in nature" and that Keith's "history of drug usage, talking big, and fabricating generates enormous doubt" that the statements were "truthful or material." The court observed that Keith's statements may have been motivated by his guilt in providing drugs to appellant on the night of the murder. Additionally, the court concluded that appellant failed to establish under *Rainer* that the statements would probably have produced a more favorable result for the appellant. 566 N.W.2d at 695. The testimony of appellant, Richard Berry, and Keith Doppler made it unlikely that this evidence would have changed the result.

Under the *Larrison* test, the postconviction court also concluded that Heather's testimony did not establish that Keith had recanted his testimony or that his testimony was false. *See Opsahl*, 677 N.W.2d at 423. Thus, the court did not consider whether the jury would have reached a different result without his testimony.[3] *See Williams v. State*, 692 N.W.2d 893, 897 (Minn.2005) (stating that when the postconviction court concludes that appellant failed to meet the first prong of *Larrison*, it need not consider whether the jury may have reached a different result without the witness's testimony).

Similarly, the postconviction court concluded that the affidavit and hearing testimony of Josh Doppler, regarding statements that Keith made to him, did not meet the requirements of the *Rainer* or *Larrison* tests. The court found that Keith's statements to Josh were "doubtful" and that Josh did not know if Keith was telling the truth or not. *See Rainer*, 566 N.W.2d at 695. The court also concluded that appellant failed to establish that if the jury had heard Keith's statements, the jury would probably have reached a different result. *Id.* For these reasons, the court concluded that Josh's testimony did not satisfy *Rainer*. Further, the court concluded that it was not reasonably satisfied that Keith's trial testimony was false and that therefore appellant did not satisfy the first prong of the *Larrison* test. *See Opsahl*, 677 N.W.2d at 423.

3. Appellant argues that the postconviction court improperly limited the scope of Heather's hearing testimony and that testimony should have been allowed about her allegations that (1) Keith had said on a separate occasion while physically abusing her that "[i]t ain't that hard to kill someone," and "I'll do to you what I've done to others"; and (2) Keith had confessed to a murder of someone whose body had never been found. The court concluded that these conversations are not relevant to Keith's guilt of Sargent's murder, nor do they disprove that appellant is guilty of Sargent's murder. Even if the postconviction court erred in barring further review of these statements, however, we conclude that any such error was harmless. Given appellant's confession and the corroborating testimony of Richard Berry and Keith Doppler, even if the jury had heard these statements at trial, it is unlikely the jury would have acquitted appellant.

We conclude that the postconviction court's finding that Keith's statements to Heather and Josh Doppler were doubtful is supported by the record and not clearly erroneous. *See Dukes v. State,* 621 N.W.2d 246, 251 (Minn.2001) (stating that a reviewing court will not reverse the findings of a postconviction court unless they are clearly erroneous). This finding rests largely upon credibility determinations in which we defer to the postconviction court. *See Opsahl v. State,* 710 N.W.2d 776, 782 (Minn.2006). Further, the record supports the conclusion that it is unlikely that the newly-discovered evidence probably would have produced a different result at trial. *See Rainer,* 566 N.W.2d at 695. Based upon the evidence presented at trial, including appellant's confession and trial testimony, along with the corroborating testimony of Richard Berry, it is unlikely that the jury would have reached a different conclusion had Keith not testified. *See State v. Turnage,* 729 N.W.2d 593, 599 (Minn.2007) (holding that under the second *Larrison* prong, "[t]he question . . . is whether the jury might have found the defendant not guilty if the recanting witness had not testified"). Consequently, the postconviction court did not abuse its discretion in denying appellant's request for a new trial for newly-discovered evidence under *Rainer,* or for recanted or false testimony under *Larrison.*[4]

## II.

■ Finally, appellant claims that his confession was lacking in "specificity" and should not have been used to implicate him at trial. According to appellant, the confession was only partially accurate because his intoxication on the night of the shooting inhibited his ability to describe what happened. The postconviction court properly rejected this claim as *Knaffla*-barred. Appellant's claim was either known, or should have been known to him, at the time of his direct appeal or his two previous postconviction petitions.

Affirmed.

ANDERSON, PAUL H., Justice (concurring in part and dissenting in part).

I concur in part and respectfully dissent in part. I agree with the majority that the affidavit of Rhonda Hanestad was properly *Knaffla*-barred, and that the affidavits and testimony of Heather Doppler Schultz and Joshua Doppler did not satisfy the *Larrison* or *Rainer* tests. But I disagree with the majority's conclusion that Albert Logan's affidavit did not merit an evidentiary hearing.

A petitioner's burden of proof for a postconviction evidentiary hearing is lower than his burden for a new trial. *Opsahl v. State,* 677 N.W.2d 414, 423 (Minn.2004). The postconviction court must hold an evidentiary hearing and make findings of fact and conclusions of law "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat.

---

4. Neither party addressed in its brief whether Keith's statements should be excluded as hearsay, but we conclude that under the standard we recently applied in *State v. Hurd,* 763 N.W.2d 17 (Minn.2009), Keith's statements were inadmissible hearsay. As with the contested statements in *Hurd,* Keith's statements to Heather and Josh Doppler were statements against interest ostensibly admissible under the Rule 804(b)(3) exception to the hearsay rule. *See* 763 N.W.2d at 35. However, as *Hurd* makes clear, statements exculpating the accused and inculpating the declarant require an enhanced showing of trustworthiness through independent corroborating evidence. *See id.* at 36. No such corroborating evidence is present here.

§ 590.04, subd. 1 (2008). To satisfy the requirements of Minn.Stat. § 590.04, subd. 1, the petitioner must allege in his petition "facts that, if proven, would entitle him to the requested relief." *Opsahl,* 677 N.W.2d at 423 (citation omitted). The allegations must have factual support, and the postconviction court must grant the evidentiary hearing whenever material facts are in dispute. *Id.* If the postconviction court has any doubts about whether to conduct a postconviction hearing, the doubts should be resolved in favor of granting the hearing. *Id.*

In paragraph 10 of a sworn affidavit submitted with petitioner's third postconviction petition, Albert Logan stated, "I know that David Doppler did not kill Mike Sargent. At the time I was convinced David could not be helped."[1] The postconviction court did not address this factual allegation when it denied petitioner's request for an evidentiary hearing on Logan's affidavit. In fact, it appears that the postconviction court may have had some doubts about what to do on this issue, because the court apparently neglected to remove a drafting comment from its February 28, 2008, Order and Memorandum indicating it struggled with how to address Logan's allegation. The comment reads simply, "Logan and paragraph 10? ? ?"

Petitioner disputes that any shot he fired was or could have been the fatal shot. Rather, he contends that Keith Doppler also shot Sargent and that it was the bullets fired by Keith Doppler that caused Sargent's death. Thus, whether petitioner fired the bullets that killed Sargent is a material fact in dispute here. We have already determined in *State v. Doppler* (*Doppler I* ), 590 N.W.2d 627, 629 (Minn. 1999), that the evidence presented at petitioner's trial was sufficient to convict him of first-degree premeditated murder; nevertheless, substantial inconsistencies exist between the physical evidence and witnesses' testimony at trial. The jury resolved those inconsistencies in a way that favored its guilty verdict. Under our standard of review, we did and should have affirmed that verdict. But new evidence could emerge that resolves those inconsistencies in petitioner's favor.

The medical examiner who performed the autopsy on Michael Sargent testified at trial about the physical evidence presented in this case. The examiner testified that Sargent had sustained four gunshot wounds. In the examiner's opinion, they occurred in the following order: the first shot grazed Sargent's chin, the second shot hit Sargent in the back of the right thigh, the third shot was fired from above and into the back left side of Sargent's head, and the fourth was fired directly into the back of Sargent's head, from within three feet. The examiner testified that of these four shots, only the final two were serious enough to result in Sargent's death. The examiner noted that the final shot passed through the back of Sargent's sweatshirt and vest. This evidence suggests that Sargent had been pulled or picked up by his clothes before the firing

---

1. The other paragraphs contained in Logan's affidavit support (1) Logan's allegation that he gave information to prosecutors "to avoid getting a life sentence at the age of 16," and (2) Logan's allegation that Keith Doppler asked Logan and petitioner on multiple occasions "how much would it be worth to get rid of Mike Sargent." Neither of these allegations are specific recantations of Logan's trial testimony. Instead, they are new facts supporting petitioner's innocence. The court should have reviewed these allegations, as well as the allegation contained in paragraph 10 of Logan's affidavit, under the *Rainer* test for newly-discovered evidence, and not under the *Larrison* test for recanted testimony.

of the final shot such that the clothes bunched up at the back of his head sometime between the firing of the first three shots and the firing of the final shot. A homicide inspector testified that there were powder burns on Sargent's sweatshirt, which indicated that the final shot had been administered from close range. The inspector also testified that after Sargent was killed, his body was placed behind a tree.

In his confession, petitioner claimed that he was alone with Sargent the night of the shooting, but he later testified at trial that he omitted details about Keith Doppler's and Rick Berry's presence that night in an attempt to protect them from being implicated in the murder. Petitioner stated in his confession that he and Sargent had gotten out of the car to go to the bathroom, and that petitioner went back to the car, grabbed a gun that was underneath the seat, and shot Sargent. Petitioner said he was unsure how many times he shot Sargent. He indicated that Sargent did not try to run away. Petitioner stated that he did not move or hide the body and that he did not take anything from Sargent's body. Petitioner provided no other details about the shooting in his confession.

At trial, petitioner expanded on his confession. He testified that he and Sargent had been arguing before pulling the car over to the side of the road and that their argument continued after they got out of the car. Petitioner testified that Sargent said "I'm going to kill you" and came at petitioner with a knife. Petitioner then shot a gun he had taken from the car into the air to warn Sargent. When Sargent continued coming at petitioner with the knife, petitioner pointed the gun at the ground and shot. Petitioner shot progressively higher as Sargent walked toward him. Petitioner testified he does not remember anything more about the incident until he, Keith Doppler, and Rick Berry drove away from the scene.

At trial, Rick Berry testified that after the men pulled over he walked approximately 40 to 50 feet into the woods from the driver's side of the car. He had his back to the car when he heard gunfire and dropped to the ground. When he turned around, Berry saw the muzzle flash of several gunshots. One shot went down and the other two went forward. He could not see who was doing the shooting. Berry ran back to the car after the shooting ended and saw petitioner holding a gun. Petitioner said, "Mike came at me with a knife, and I shot him." Berry testified that he did not see Sargent's body.

Keith Doppler also testified at trial. He testified that after the men pulled over he walked about 20 feet into the woods from the passenger side of the car. He heard petitioner and Sargent screaming at each other, heard a slap or a smack like somebody got hit, and heard Sargent say "I'm going to kill you." He heard petitioner say "get away." Then he saw a flash of a handgun go "up in the air" and heard petitioner yell "get the f* *k away." Keith Doppler began to run back to the car and heard a second shot as he ran. He could see Sargent was still standing after this second shot. Then Keith Doppler heard rapid shooting. When Keith Doppler reached the car, he heard the gun going "click, click, click, click, click." Petitioner was on his knees on the passenger side of car, only a couple of feet away from the bottom of Sargent's feet, crying and screaming. Keith Doppler grabbed petitioner and threw him in the car. Then Berry arrived at the car. The three men

got in the car and started to drive away, but Keith Doppler decided he should stop and check on Sargent. He ran "down there" to Sargent's body, grabbed Sargent's left hand and checked for a pulse. He testified that there was none. He then reached into Sargent's pocket and took Sargent's driver's license. Keith Doppler testified that he did not move Sargent's body.

Petitioner's confession and testimony, and the testimony of Keith Doppler and Rick Berry, plainly contradict the physical evidence submitted at trial. Most significantly, the testimony that petitioner fired repeatedly at Sargent as Sargent ran at petitioner is inconsistent with the medical examiner's testimony that Sargent was pulled or picked up by his clothes and then shot execution-style in the back of the head from close range. None of the witnesses claim to have moved Sargent's body, but forensic evidence indicated Sargent's body was moved behind a tree after the final shot was administered.

Petitioner's trial counsel did not advance the theory that Keith Doppler actually killed Sargent. But petitioner now claims that Keith Doppler fired the fatal shots. As factual support for this allegation, he provides sworn affidavits from Joshua Doppler, Heather Doppler Schultz, and Rhonda Hanestad that claim Keith Doppler has admitted to committing the murder, and the sworn affidavit of Albert Logan in which Logan claims he has actual knowledge of petitioner's innocence. Hanestad's claims are properly *Knaffla*-barred, and the court correctly concluded that Heather Doppler Schultz and Joshua Doppler's testimony and affidavits did not satisfy the *Larrison* or *Rainer* tests. But Logan's statements were not procedurally barred, and they should have been explored in an evidentiary hearing.

Given that there is a factual dispute about who actually killed Sargent, and given that Albert Logan claims to have personal knowledge that can resolve that dispute, I conclude that the postconviction court abused its discretion by prohibiting an evidentiary hearing on Logan's affidavit. Admittedly, the allegation of petitioner's innocence contained in Logan's affidavit is bare bones. We would typically require a more detailed allegation before we would order a hearing, but under the facts and circumstances present in this case, specifically the inconsistencies between the physical evidence and the testimony presented at trial, an evidentiary hearing on Logan's claim is warranted. As we said in *Opsahl*, any doubt as to whether the postconviction court should order an evidentiary hearing should be resolved in favor of the hearing. *See Opsahl*, 677 N.W.2d at 423. Moreover, the postconviction court did conduct a limited evidentiary hearing on the affidavits of Heather Doppler Schultz and Joshua Doppler. It would not have required a significant additional expenditure of judicial resources to have included Logan as part of that hearing. I would reverse the postconviction court's ruling as to Logan's affidavit and remand for an evidentiary hearing to explore the claim made in paragraph 10 of Logan's affidavit.

MEYER, Justice (concurring in part and dissenting in part).

I join in the concurrence and dissent of Justice Paul H. Anderson.

ANDERSON, G. BARRY, Justice (concurring in part and dissenting in part).

I join in the concurrence and dissent of Justice Paul H. Anderson.