*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0384**

Larry Dean Mensing, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 2, 2015
Affirmed
Smith, Judge**

Steele County District Court
File No. 74-CR-11-2150

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, Owatonna, Minnesota (for respondent)

Considered and decided by Smith, Presiding Judge; Stauber, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the postconviction court's denial of postconviction relief because appellant did not establish ineffective assistance of counsel and the district court, under this record, had no duty to inquire about the attorney's alleged conflict of interest or warn appellant about dual representation.

**FACTS**

In 2011, the state separately charged appellant Larry Mensing (Mensing) and his wife Melissa Mensing with wrongfully obtaining public assistance, filing a false sales tax return in 2006, five counts of failure to file a sales tax return from 2007 to 2011, and five counts of failure to pay sales tax from 2007 to 2011. It also charged Mensing with three misdemeanor-disorderly-conduct offenses in separate files. Attorney Douglas Boese represented both Mensing and Melissa Mensing in their separate cases.

To resolve his files, Mensing and the prosecutor submitted stipulated facts to the district court under Minn. R. Crim. P. 26.01, subd. 3, asking the district court to consider four counts of failure to file a sales tax return for 2007-2010 and one count of misdemeanor disorderly conduct. All other charges against Mensing were dismissed. Regarding the sales-tax charges, the parties agreed that restitution would be joint and several with Melissa Mensing. And in exchange for the dismissal of his wrongfully-obtaining-public-assistance charge, Mensing agreed to joint restitution on Melissa Mensing's same charge. Based on the stipulated facts, the district court found Mensing guilty of the submitted sales-tax and disorderly-conduct charges.

Over two months after Mensing's sentencing, the district court held a hearing to discuss Mensing's jail status. Before the start of the hearing, Mensing assaulted Boese. Boese told the court:

> Your Honor, I came over this morning intending to discuss the issue. I'm now asking the [c]ourt verbally to allow me to withdraw from representation of both Mr. Mensing and Mrs. Mensing. Conflicts have arisen between us and between them that would require me to choose between one or the other, and court rules would not allow me to do that.

Mensing then alleged that Boese had "railroaded" him into pleading guilty. The district court granted Boese's motion to withdraw.

Mensing then filed a petition for postconviction relief, arguing that he had received ineffective assistance of counsel because Boese had a conflict of interest, the district court failed to inquire about Boese's conflict of interest, and the district court failed to warn Mensing of the dangers of dual representation. At the postconviction hearing, Mensing testified that he was dyslexic and did not read the business documents that he signed. He further testified that Melissa Mensing contacted Boese regarding representation and that Boese said nothing to him about the potential problems of dual representation. But Mensing admitted that he and Melissa Mensing originally had the same defenses to the charges, although they now had different positions.

In contrast to Mensing's testimony, Boese testified that he had represented the Mensings in various matters over the years, that he could not remember who contacted him about the current case, and that he discussed dual representation and the potential conflict of interest with the Mensings. Boese explained:

> [W]hen I was in the Army, I represented people who were charged with crimes. At that time we talked about dropping a dime on another person because at that time a dime could get you a phone call somewhere, and you could call and report someone else. I told them they could drop the dime on the other one if they wanted to and see if the prosecutor would accept . . . what information they were willing to give in exchange to drop the charge or get a lesser sentence. They indicated to me that . . . they were both involved, [and] that neither one of them wanted to rat out or drop a dime on the other one.

Boese also testified that he read the stipulation to Mensing, but could not remember whether he did so over the phone or in person. In addition, Boese testified that the Mensings had the same defenses and interests during his representation and that if they had raised competing interests, he would have referred them to other attorneys. He explained that the only conflict arose after Mensing "put his arm across my throat" and threatened him before the January 2013 hearing.

The postconviction court dismissed Mensing's petition for postconviction relief, finding that Mensing failed to show an actual conflict of interest or that the district court had a duty to inquire or warn about his representation. The postconviction court also found that Boese's testimony was credible but that Mensing's testimony "was not credible and his positions were not corroborated by the record."

**D E C I S I O N**

**I.**

Mensing first argues that the postconviction court erred by finding that he failed to show ineffective assistance of counsel. We review the denial of postconviction relief based on an ineffective-assistance-of-counsel claim de novo because it presents a mixed

4

question of law and fact. *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013). But we defer to the postconviction court's credibility determinations. *Doppler v. State*, 771 N.W.2d 867, 875 (Minn. 2009).

The federal and state constitutions guarantee the right to counsel in criminal trials. U.S. Const. amend. VI; Minn. Const. art I, § 6. This right includes "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103 (1981). "A lawyer's performance is deficient if he represents a client despite having a conflict of interest." *State v. Paige*, 765 N.W.2d 134, 140 (Minn. App. 2009).

"The burden of a defendant claiming ineffective assistance due to a conflict of interest depends on whether and to what extent the alleged conflict was brought to the [district] court's attention." *Cooper v. State*, 565 N.W.2d 27, 32 (Minn. App. 1997), *review denied* (Minn. Aug. 5, 1997). An appellant who did not object to the alleged conflict at trial "must demonstrate that defense counsel 'actively represented conflicting interests' and this conflict 'adversely affected [the] lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350, 100 S. Ct. 1708, 1718, 1719 (1980)). If the appellant establishes a conflict of interest, prejudice is "generally presumed." *Paige*, 765 N.W.2d at 140. Because Mensing did not object at trial to Boese's performance, he must show an actual conflict of interest and an adverse effect on Boese's performance. *See Cooper*, 565 N.W.2d at 32.

"A conflict of interest exists if 'there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another

5

client, a former client or a third person, or by a personal interest of the lawyer.'" *Paige*, 765 N.W.2d at 140 (quoting Minn. R. Prof. Conduct 1.7(a)(2)). The mere possibility of a conflict does not satisfy the defendant's burden to show that the attorney "actively represented conflicting interests." *Sullivan*, 446 U.S. at 350, 100 S. Ct. at 1719. An attorney's determination that there is no conflict of interest is entitled to "great weight." *Cooper*, 565 N.W.2d at 32.

Mensing argues that Boese's representation was "materially limited" because he failed to inform Mensing of his defenses, "especially those that could have been antagonistic to [Melissa Mensing]." *See Paige*, 765 N.W.2d at 140 (quotation omitted). But the postconviction court rejected this assertion, finding that Mensing's testimony was "not credible" and that no other evidence was submitted to support this claim. A petitioner's "uncorroborated testimony" at a postconviction proceeding "is not sufficient to sustain his burden of proof." *State v. Knight*, 292 Minn. 419, 422, 192 N.W.2d 829, 831 (1971). And we must defer to the postconviction court's credibility determinations. *Doppler*, 771 N.W.2d at 875.

In contrast, Boese's testimony was both credible and entitled to "great weight." *See Cooper*, 565 N.W.2d at 32. Boese testified that he discussed all defenses with the Mensings, including Mensing's possible defense "that he didn't understand what he was signing" and Boese's legal advice that this defense would be difficult to prove "because [Mensing] had certified that the information was correct on the form that was filled out." According to Boese, Mensing "understood what the defenses were" and wanted to plead guilty to protect Melissa Mensing. Boese testified that "[t]he entire time that [he] worked

with [the Mensings], they had the same defense" and that "neither one of them wanted to rat out or drop a dime on the other one." Mensing even conceded at the postconviction hearing that he and Melissa Mensing originally had the same defenses. As the postconviction court found, the record contains no evidence of a conflict of interest until Mensing assaulted Boese, months after the resolution of the relevant charges.

Because Mensing's testimony about Boese's alleged failure to discuss defenses was both not credible, *see Doppler*, 771 N.W.2d at 875, and uncorroborated, *see Knight*, 292 Minn. at 422, 192 N.W.2d at 831, we agree with the postconviction court that Mensing did not meet his burden to show an actual conflict of interest. We also note that Mensing failed to show an adverse effect on Boese's performance. *See Cooper*, 565 N.W.2d at 33 (stating that "vague, unfounded allegations are insufficient to establish" an adverse effect). The postconviction court therefore did not err by denying postconviction relief based on Mensing's ineffective-assistance argument.

## II.

Mensing next argues that he is entitled to postconviction relief because the district court should have inquired about Boese's potential conflict of interest. But "[u]nless the [district] court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Sullivan*, 446 U.S. at 347, 100 S. Ct. at 1717. If a defendant shows that the district court should have inquired about a potential conflict and failed to do so, the defendant must still show that the conflict adversely affected the attorney's performance. *Mickens v. Taylor*, 535 U.S. 162, 173-74, 122 S. Ct. 1237, 1245 (2002).

Mensing argues that the district court should have known about a potential conflict because he agreed to joint restitution for Melissa Mensing's wrongfully-obtaining-public-assistance charge but did not stipulate to any facts regarding his involvement in this charge. But Mensing agreed to joint restitution in exchange for the dismissal of the wrongfully-obtaining-public-assistance charge against him. Mensing's agreement to joint restitution merely reflects his acquiescence to the terms of the plea bargain. It does not suggest a conflict between the Mensings.

Mensing also argues that the district court should have known about a potential conflict because Melissa Mensing's stipulation showed that she was solely or mainly responsible for the Mensings' criminal charges. But Melissa Mensing's stipulation in her separate files did not affect Mensing's own stipulation or his subsequent convictions. In his stipulated facts, Mensing admitted that both Mensings operated the business, signed contracts, and failed to file sales-tax returns from 2007 to 2010, even though they "knew Minnesota sales tax was due." Mensing also admitted that both he and Melissa Mensing "willfully failed to file" the required returns. These admissions raise no hint of a conflict of interest at the time of the stipulation. The district court could infer from Mensing's stipulation and his failure to object to a potential conflict that there was no conflict of interest or that Mensing knowingly accepted the risk. *See Sullivan*, 446 U.S. at 346-47, 100 S. Ct. at 1717 (stating that, "[a]bsent special circumstances," a district court may assume that there is no conflict of interest "or that the lawyer and his clients knowingly accept such risk of conflict as may exist").

8

The record does not support Mensing's assertion that the district court knew or should have known of a potential conflict of interest, and Mensing's representation did not trigger the district court's duty to inquire. *See Mickens*, 535 U.S. at 168-69, 122 S. Ct. at 1242 (stating that a "vague, unspecified possibility of conflict" does not trigger the duty to inquire). Even if the district court should have known of the potential conflict, Mensing's vague allegations fail to show an adverse effect on Boese's representation. *See Cooper*, 565 N.W.2d at 33 (stating that "vague, unfounded allegations are insufficient to establish" an adverse effect). The postconviction court did not err by determining that the district court had no duty to inquire about a conflict of interest.

**III.**

Finally, Mensing argues that he is entitled to postconviction relief because the district court failed to warn him about dual representation. When two or more defendants who are represented by the same attorney "are jointly charged or will be tried jointly," the district court must "advise each defendant of the potential danger of dual representation" and allow each defendant to ask questions about dual representation. Minn. R. Crim. P. 17.03, subd. 5(1). But the Mensings were neither "jointly charged" nor "tried jointly." *See id.* The Mensings submitted separate documents of stipulated facts to resolve their separate files and separate charges, were convicted of different charges, and were sentenced on different dates.

Mensing concedes that his charges were not actually joined with Melissa Mensing's but argues that the Mensings' cases were "effectively joined." We disagree. The differences in charges, convictions, and hearing dates provide no evidence of an

"effective joinder." In addition, rule 17.03, subdivision 5 requires a court warning when defendants are "jointly charged" or "tried jointly" only, not when they are "effectively joined." *See id.* Because the Mensings were not "jointly charged" or "tried jointly," rule 17.03, subdivision 5 did not apply. *See id.*

**Affirmed.**