**Joseph Leander RAINER,**
**Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C7–96–1807.

Supreme Court of Minnesota.

July 10, 1997.

Joseph Rainer, Stillwater, pro se.

Hubert H. Humphrey, III, Minnesota Attorney General, St. Paul, Walter M. Kaminsky, Sherburne County Attorney, Thomas N. Price, Assistant Sherburne County Attorney, Elk River, for Respondent.

## OPINION

TOMLJANOVICH, Justice.

This is an appeal from the denial of a second petition for postconviction relief. Petitioner Joseph Leander Rainer was convicted of first-degree murder in May 1986 for the shooting death of Marla Forrest. Rainer challenged his conviction on direct appeal and we affirmed his conviction. *State v. Rainer*, 411 N.W.2d 490 (Minn.1987) ("*Rainer I*"). Rainer then sought habeas relief in federal district court, which the court denied. The Eighth Circuit Court of Appeals subsequently affirmed the denial. *Rainer v. Department of Corrections*, 914 F.2d 1067 (8th Cir.1990), *cert. denied*, 498 U.S. 1099, 111 S.Ct. 993, 112 L.Ed.2d 1077 (1991).

In July 1991, Rainer filed his first petition for postconviction relief, arguing that he was denied effective assistance of counsel and that newly discovered evidence warranted a new trial. The trial court denied Rainer's petition and we affirmed the denial. *State v. Rainer*, 502 N.W.2d 784 (Minn.1993) ("*Rainer II*").

Rainer subsequently filed a second petition for postconviction relief, which is the subject of this appeal. The trial court again denied Rainer postconviction relief and we hold that the postconviction court properly denied the relief.

We stated the facts of this case in *Rainer I*, 411 N.W.2d 490 (Minn.1987):

Defendant and Marla Forrest had known each other since the summer of 1983 when Forrest began taking her car to defendant's gas station. The two spent time together and defendant wanted to get married, but Forrest was not prepared to make a commitment. Within the last two weeks before the shooting Forrest told friends that she planned to terminate the relationship.

On October 27, 1984, Forrest went to defendant's house so that he could replace the engine in her car. Her 9–year–old son Tobi went along. During the afternoon Forrest and defendant talked and drank beer, while Tobi amused himself. Forrest sounded normal and cheerful when her father telephoned and she told him that she would use defendant's car to get home. At one point during the afternoon Tobi heard an argument between Forrest and defendant.

At the end of the afternoon as Forrest was leaving, defendant walked her out to the car. According to the account of the incident defendant gave the police, he picked up a single shot 12–gauge shotgun that he had left lying in the breezeway, tucked it under his arm, and it accidentally fired, hitting Forrest in the back. He said that he had been shooting squirrels that morning and had left the gun in the breezeway and that he picked it up to get it out of the mist. Defendant's former wife, Maxine, testified that defendant made a habit of keeping his guns loaded. Tobi said that the gun was not in the breezeway but in the living room, leaning against the wall near the gun case. Defendant's tenant said that he did not remember seeing a gun in the breezeway when he walked through the breezeway in the early afternoon.

Medical evidence indicated that Forrest was shot in the back from one [1] to two [2] feet away at a downward angle of between 10 and 20 degrees. The wound was 44 1/2 inches from Forrest's bare feet, and her boots added another 1 3/4 to 2 inches. Defendant measured between 47 3/8 inches and 53 inches from stocking foot to armpit (measurements at different times yielded different results); his boots added another 1 3/4 inches. The downward angle and the measurements of the two bodies were relevant to the question of whether the gun was under defendant's arm when it went off, as he claimed, or whether it was at his shoulder, a normal position for intentional firing, as the state hypothesized.

Expert testimony concerning the gun established that the gun required cocking before firing, though it had no other safety device, and that a moderate to heavy amount of force was needed for pulling the trigger. The gun would not discharge without the trigger being pulled when it was tested by dropping it or striking it with a rubber mallet when it was cocked. No tests were made concerning pulling the gun along clothing, though the expert agreed that the gun could be cocked by catching it on clothing. The expert did not comment on whether the trigger could be pulled by drawing it across clothing.

*Rainer I*, 411 N.W.2d at 493–95.

In this second petition for postconviction relief, Rainer primarily raises two substantive claims: (1) that he was entitled to a new trial based on newly discovered evidence contained in an anonymous letter, and (2) that his inmate wages were wrongfully withheld in violation of due process, double jeopardy, ex post facto, and equal protection.[1]

---

1. In his second petition for postconviction relief, Rainer also challenges the trial court's admission of prior bad acts, the state investigator's presence during the defense expert's examination of the gun, redenial of effective assistance of counsel during his motion for a *Schwartz* hearing, and the unconstitutional nature of the indictment and the statute under which he was convicted. Because Rainer failed to address these issues in his informal brief, each is deemed to be waived on appeal to this court. *Scruggs v. State*, 484 N.W.2d 21, 24 (Minn.1992).

Furthermore, none of these remaining claims warrants postconviction relief. In regard to the first three claims, Rainer has twice before raised these issues in his direct appeal and his first petition for postconviction relief. Thus, these issues will not be considered in a subsequent petition for postconviction relief. *Roby v. State*, 531 N.W.2d 482, 483–84 (Minn.1995); *Case v. State*, 364 N.W.2d 797, 799 (Minn.1985) (citing *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976)). In regard to his claim that

Our review of a postconviction proceeding is limited to a determination of whether there is sufficient evidence to sustain the postconviction court's findings. *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn. 1992). We will not disturb a postconviction court's decision absent an abuse of discretion. *Id.*

First, Rainer argues that he is entitled to postconviction relief based on an anonymous letter, which reads as follows:

Mr. Rainer, I heard you were going back to court on something that you are in prison for. I am not going to have this on my mind forever. You don't belong there. The girl's son was 8 or 9 years old. They told him to say the gun was in the house. Something about you killed an animal outside, and had the shells some place in a car garage and you were stupid to leave a loaded gun outside. I heard they shaved some hammer off the gun so you can't say it caught on all the clothes you had on. Can't you tell someone about this wrongdoing. I can't tell you who I am. I will be in hot water, but you don't belong there.

Without an evidentiary hearing, the trial court denied postconviction relief, holding that the letter was not reliable and that it would be unlikely to produce an acquittal or a more favorable result. We have held that an evidentiary hearing is not required unless the petitioner alleges such facts which, if proved by a fair preponderance of the evidence, would entitle him or her to the requested relief. *Roby v. State*, 547 N.W.2d 354, 356 (Minn.1996); *Hanley v. State*, 534 N.W.2d 277, 278 (Minn.1995). Furthermore, the allegations raised in the petition must be more than argumentative assertions without factual support. *Roby*, 547 N.W.2d at 356;

*Hodgson v. State*, 540 N.W.2d 515, 516 (Minn.1995).

When determining whether to grant a new trial based upon newly discovered evidence, a defendant must prove the following: (1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result. *Hodgson*, 540 N.W.2d at 517, *Race v. State*, 504 N.W.2d 214, 217 (Minn.1993).

In Rainer's affidavit submitted to the trial court on the issue of the anonymous letter, he asserted that the prosecution's expert disassembled the gun and filed down the hammer on the gun without the notification by the prosecution. However, the only factual support Rainer provides is the anonymous and uncorroborated letter.

The letter is not a sufficient basis on which to grant a new trial because it fails to meet each of the last three requirements of *Hodgson*. First, Rainer could have discovered prior to trial evidence that the prosecution's expert had filed down the hammer because Rainer had retained a firearms expert to examine the gun prior to trial.[2] Secondly, the evidence to support Rainer's allegation is based solely on the anonymous letter, which is uncorroborated and unreliable. Finally, the letter is unlikely to produce a more favorable result to Rainer because it constitutes inadmissible hearsay. Even if the letter were admissible, it still fails to address expert testimony that both the hammer and the trigger would have had to snag on Rainer's clothes at the same time for the gun to

both the language of the indictment and the statute under which he was convicted are unconstitutional, Rainer had ample opportunity to raise such claims on direct appeal. Because these claims were known to Rainer at the time of his direct appeal, his failure to raise them at that time precludes him from raising them now. *See Hodgson v. State*, 540 N.W.2d 515, 517 (Minn. 1995); *Fox v. State*, 474 N.W.2d 821, 824 (Minn. 1991); *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741.

**2.** Although Rainer's expert conducted an examination of the gun, Rainer's attorney decided not

to call the expert as a witness at trial because of adverse information that arose regarding the expert's examination. Specifically, an investigator with the sheriff's department was present during the examination and he subsequently wrote a report regarding his observations of the examination. In that report, the investigator quoted the expert as making negative comments about Rainer's story, particularly with regard to the angle of the wound and the position in which the gun was held. *Rainer II*, 502 N.W.2d at 786–87.

accidentally fire.[3] Given the unreliable nature of this letter, an evidentiary hearing on this issue was not required and postconviction relief was properly denied.

Rainer also argues that he is entitled to postconviction relief because his constitutional rights are being violated by the Department of Corrections' deduction of room and board costs from his inmate wages to offset the cost of his incarceration. Specifically, Rainer argues that such a policy is unconstitutional because it violates double jeopardy, ex post facto, and his rights to due process and equal protection.[4] Although the trial court held that Rainer improperly challenged the constitutionality of the wage withholding statutes, the court concluded that such statutes were constitutional.

■ We decline any review on the merits of this claim because it is not properly brought as a basis for postconviction relief. Postconviction remedies generally are available only for claims "that the conviction obtained or the sentence or other disposition made violated the person's rights under the Constitution or laws of the United States or of the state * * * ." Minn.Stat. § 590.01, subd. 1 (1996). Rainer's challenge to the wage withholding policy of DOCs is not related to his conviction or sentence for first-degree murder. Because the constitutionality of the wage withholding policy is an issue completely separate from Rainer's conviction or sentence, it is improperly brought as a basis for postconviction relief. *Thompson v. State*, 284 Minn. 274, 277–78, 170 N.W.2d 101, 104 (1969) (the Postconviction Remedy Act was enacted to provide a postconviction remedy by which a defendant may attack the judgment of conviction).

In summary, we conclude that an anonymous and uncorroborated letter is not a sufficient basis on which to grant a new trial. We further hold that constitutional claims against the Department of Corrections' deduction of room and board costs from inmate wages to offset the cost of incarceration are not properly brought as a basis for postconviction relief.

Affirmed.

---

**3.** We further note that at the time of the trial, Rainer was aware that the gun was disassembled because photo exhibits of the gun showed that it had been disassembled to reveal the internal mechanisms of the gun. Because Rainer was aware that the gun was disassembled at the time of his direct appeal and failed to challenge this matter, he should be denied the opportunity to raise it at this time. *Fox v. State*, 474 N.W.2d 821, 824 (Minn.1991).

**4.** Although all four constitutional claims were raised in Rainer's second petition for postconviction relief, his brief to this court failed to address the equal protection and due process claims.