For these reasons, I respectfully dissent.

**Eugene Erick FORT, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A12–0617.

Supreme Court of Minnesota.

April 17, 2013.

80

Craig E. Cascarano, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant Hennepin County Attorney, Minneapolis, MN, for respondent.

## OPINION

ANDERSON, Paul H., Justice.

Eugene Erick Fort appeals the postconviction court's denial of his petition and motion for postconviction relief, actions which he brought following his first-degree murder conviction for the 1990 killing of Marcus Potts. We affirmed Fort's conviction for first-degree premeditated murder on direct appeal. *See State v. Fort (Fort I)*, 768 N.W.2d 335 (Minn.2009). The basis for Fort's postconviction appeal is his request for an evidentiary hearing to consider evidence he asserts is new and exculpatory. More specifically, Fort seeks a hearing to consider: (1) newly discovered eyewitness testimony, which he claims buttresses his alternative-perpetrator theory; and (2) whether he is entitled to have DNA testing of a sample from a 12-inch smear found at the crime scene. The postconviction court denied Fort's petition and motion without granting an evidentiary hearing. The court did so on the ground that Fort did not meet the standard for receiving an evidentiary hearing that we previously articulated in *Ferguson v. State*, 645 N.W.2d 437 (Minn.2002), and *Opsahl v. State*, 677 N.W.2d 414 (Minn. 2004). We affirm.

In the early morning hours of December 15, 1990, 11-year-old Marcus Potts was stabbed 44 times and, as a result, died in his north Minneapolis home.[1] Potts's mother discovered her son's body upon her return from work at approximately 2:00 a.m. She called 911 for assistance. During the initial crime scene investigation, police officers noticed a set of footprints in the snow covering that was on the ground at the time of the murder. A police dog accompanying one of the officers followed the prints from a side door of the Potts's home to a neighboring house, where Fort lived. This information led the police to focus on Fort as a suspect. As part of their investigation, the police obtained and

1. This opinion includes only an abbreviated recitation of the facts underlying Fort's conviction. A full recitation of the facts can be found in *Fort I*, 768 N.W.2d at 338–41.

executed a search warrant for Fort's home and interviewed Fort several times.

On December 27, 1990, the police obtained a second search warrant for Fort's home. Using specialized equipment, which had not been available during the December 15 search, the police detected eight drops of blood in Fort's home. But the blood samples were too small to be tested using the technology that was available in 1990. By 2001, DNA-testing technology had advanced sufficiently so that the samples could be tested. The 2001 test results showed that the blood samples from Fort's home matched Potts's DNA. In addition to the DNA evidence, four witnesses told police investigators, and ultimately testified at trial that while Fort was in jail during the December 1990 investigation, he confessed that he murdered Potts.

On December 7, 2006, a Hennepin County grand jury indicted Fort on two counts of first-degree murder: first-degree premeditated murder, Minn.Stat. § 609.185(a)(1) (2012), and first-degree murder while committing a burglary, Minn.Stat. § 609.185(a)(3) (2012). Following a jury trial in May 2007, Fort was found guilty of both counts. During jury deliberations, however, a man placed a telephone call to Fort's trial counsel and said that P.R., Fort's cousin, had confessed to Potts's murder. Based on this evidence, Fort requested a new trial and the district court held an evidentiary hearing on September 14, 2007, to consider the alleged confession by Fort's cousin. The court denied Fort's request for a new trial, convicted Fort of both counts of first-degree murder, and sentenced Fort to life in prison without the possibility of parole.

Fort appealed his conviction to our court. We affirmed Fort's conviction of first-degree premeditated murder, but we vacated his conviction of first-degree murder while committing a burglary on the ground that a defendant may only be convicted of one count of first-degree murder in connection with a single murder. *Fort I*, 768 N.W.2d at 344. We denied Fort's petition for rehearing.

On July 14, 2011, Fort brought a "Petition for Post–Conviction Relief." Within this document, Fort petitioned for postconviction relief, seeking an evidentiary hearing regarding "newly discovered" testimony from an acquaintance, A.Z., who would testify about the whereabouts of P.R. in the hours before Potts was murdered. Pursuant to Minn.Stat. § 590.01, subd. 1a (2012), in his "Petition" Fort also requested DNA testing on a sample from a 12–inch smear found at the crime scene. Under the statute, such a request should be characterized as a motion rather than a petition. *Id.* On February 9, 2012, the postconviction court denied Fort's petition for postconviction relief and, treating Fort's request for DNA testing as a motion, denied Fort's request for DNA testing. Fort then appealed to our court.

Fort's appeal raises two issues for our review: first, whether the postconviction court abused its discretion when it denied, without an evidentiary hearing, Fort's petition for postconviction relief based on the alleged newly discovered A.Z. testimony; and second, whether the postconviction court abused its discretion when it denied, without an evidentiary hearing, Fort's motion for new DNA testing on the sample from the 12–inch smear.

### A. A.Z. Testimony

When we review postconviction proceedings under Minn.Stat. § 590.01 (2012), we conduct " 'a broad review of both questions of law and fact.' " *Dobbins v. State*, 788 N.W.2d 719, 725 (Minn.2010) (quoting *Butala v. State*, 664 N.W.2d 333, 338 (Minn.2003)); *accord El–Shabazz v. State*, 754 N.W.2d 370, 374 (Minn.2008);

*Spann v. State*, 740 N.W.2d 570, 572 (Minn.2007). The scope of our review of factual matters is to determine whether there was "sufficient evidence in the record to sustain the postconviction court's findings." *Dobbins*, 788 N.W.2d at 725 (citations omitted) (internal quotation marks omitted); *see also Riley v. State*, 819 N.W.2d 162, 167 (Minn.2012). We will not disturb the postconviction court's factual determinations unless they are clearly erroneous. *Riley*, 819 N.W.2d at 167. We review the postconviction court's legal conclusions de novo. *Id.; see also Bobo v. State*, 820 N.W.2d 511, 516 (Minn.2012). Ultimately, we review a denial of a petition for postconviction relief, including denial of an evidentiary hearing, for an abuse of discretion. *Riley*, 819 N.W.2d at 167.

A defendant may petition for postconviction relief on the grounds that his constitutional rights or other rights have been violated. Minn.Stat. § 590.01, subd. 1(1). The postconviction court is required to hold an evidentiary hearing on such a petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2012); *see also Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007) ("[A]n evidentiary hearing is unnecessary if the petitioner fails to allege facts that are sufficient to entitle him or her to the relief requested.").

■ Fort argues that A.Z. has emerged as a new witness who can provide testimony that P.R. was with Fort and A.Z. in the vicinity of the crime scene several hours before Potts's murder. To support this assertion, Fort filed a motion on November 23, 2009, attaching an affidavit signed by A.Z. that states that A.Z. was with both Fort and P.R. on the evening of the murder, and that A.Z. will testify that he last saw Fort at 10:15 p.m. on the night of the murder and that he last saw P.R. at 11:25 p.m. A.Z. also asserts in the affidavit that, on the day after the murder, P.R. told A.Z. "about the murder of the little boy" and that P.R. "seemed shook up and told [A.Z.] that the police wanted to talk to [P.R.]." After fully considering the evidence offered by Fort, the postconviction court concluded that, even if the court accepted A.Z.'s affidavit as true, Fort was not entitled to his requested relief. More specifically, the court concluded that A.Z.'s "testimony does not contain direct evidence as to [Fort's] guilt or innocence, but merely asserts that [P.R.] knew about the murder after the fact."

■ We have held that a postconviction court need not hold an evidentiary hearing when a petitioner "alleges facts that, if true, are legally insufficient to entitle him to the requested relief." *Bobo*, 820 N.W.2d at 517 (citing *Spann*, 740 N.W.2d at 572). When a petitioner offers newly discovered evidence, such evidence will be considered using the test we articulated in *Rainer v. State*, 566 N.W.2d 692 (Minn. 1997), and the petitioner must allege facts that, if proven by a fair preponderance of the evidence, would satisfy all four prongs from *Rainer*. *Bobo*, 820 N.W.2d at 517. Under *Rainer*, a defendant is entitled to a new trial only if all four of the following requirements are satisfied: (1) the new evidence was not known to the petitioner or his or her counsel at the time of trial; (2) the new evidence could not have been discovered through due diligence prior to trial; (3) the new evidence is not cumulative, impeaching, or doubtful; and (4) the new evidence would probably produce an acquittal or a more favorable result. *Rainer*, 566 N.W.2d at 695.

Analyzing A.Z.'s affidavit under the four prongs of the *Rainer* test shows that the testimony does not meet any of the four requirements. First, A.Z.'s affidavit indi-

cates that A.Z. was with P.R. *and Fort* on the night of Potts's murder. If A.Z.'s statements are true, Fort has known about this potential evidence to support his alternative-perpetrator theory for the 22 years preceding this appeal and for the 17 years before his trial. Thus, the evidence provided in the affidavit does not and cannot support his claim that the evidence was not known to him at the time of his trial. Second, based on the evidence he seeks to admit, Fort was aware or should have been aware that A.Z. had knowledge of the events that occurred on the date of the murder and, therefore, could have discovered P.R.'s statements the day after the murder with due diligence. Thus, the alleged newly discovered evidence could have been discovered with due diligence before his trial. Third, the postconviction court found that Fort "presented significant evidence" at trial in support of his alternative-perpetrator theory regarding P.R.[2] and that the jury rejected this evidence. Therefore, the postconviction court found that the evidence provided in A.Z.'s affidavit was, at best, cumulative to evidence presented at trial—a finding supported by the trial record. We conclude that the postconviction court's findings are not in error and are supported by the record, meaning the evidence does not meet *Rainer's* third prong because the "new evidence" is at best cumulative.

We also conclude that, given the DNA evidence and four witnesses at trial who testified that Fort confessed to the crime, it is unlikely that A.Z.'s testimony at a hearing—or trial—would produce sufficient new evidence for either an acquittal or a more favorable result, as required by the fourth prong of the *Rainer* test. This conclusion is especially true regarding the alleged fact that P.R. was aware of Potts's

murder the day following the murder, evidence that does not weigh for or against Fort's—or P.R.'s—guilt in any way because Potts's murder had already been discovered and investigated. Moreover, even when Fort's claims regarding the new evidence are taken as true, his claims do not meet the threshold showing that is required for an evidentiary hearing, nor does his petition for relief meet the standard for receiving a new trial.

For all the foregoing reasons, we hold that the postconviction court did not abuse its discretion when it denied Fort relief without granting an evidentiary hearing on his postconviction petition on the newly discovered evidence claim.

### B. Motion for DNA Testing on Sample from 12–Inch Smear

■ We apply the same standard of review when considering the denial of Fort's motion for new forensic testing as we do when reviewing his petition for postconviction relief: factual determinations are reviewed using a clearly erroneous standard and we will not reverse unless the factual determinations are not supported by the record. *See Riley*, 819 N.W.2d at 167, 171–72 (applying this standard in an appeal based partly on the denial of a motion for new DNA testing). Legal conclusions are reviewed de novo. *See id.* at 167.

The sample Fort seeks to have tested was taken from a 12–inch smear found on a wall by the rear steps of Potts's home. The sample was initially tested in 1991 and was found to contain blood, but the sample was insufficient for enzyme testing. There was an attempt to reexamine the sample in March 2007 using new DNA-testing technology, but the sample was found to be either nonexistent or too small to test. No

---

**2.** The postconviction court was dismissive of Fort's proffered evidence, finding only that

Fort offered evidence that Fort "claimed" supported his alternative-perpetrator theory.

other sample from the 12–inch smear exists. The postconviction court thus found that Fort's motion for DNA testing could not be granted as a "practical" matter, the legal issues notwithstanding. Further, Fort failed to assert that any new DNA-testing technology exists that would make testing the sample either possible or practicable. Fort has offered no evidence and makes no assertions that contest the court's findings, instead he argues that the only way to determine the veracity of these findings is to cross-examine the State's experts in the context of an evidentiary hearing.

Under Minn.Stat. § 590.01, subd. 1a, an individual convicted of a crime may bring a motion for fingerprint or forensic DNA testing to demonstrate the person's "actual innocence" if the evidence to be tested: (1) was "secured in relation to the trial which resulted in the conviction;" and (2) was not "subject to the testing because either the technology for the testing was not available at the time of the trial or the testing was not available as evidence at the time of the trial." *Id.*, subd. 1a(a). We have held that a defendant's motion for new testing fails when it does not identify any new technology that would permit additional testing to meet the statutory requirements. *Id.*, subd. 1a(a)(2); *see also Riley*, 819 N.W.2d at 172.

We conclude that Fort has not met the threshold for receiving relief because he has made no assertion that new technology has been developed to render the sample from the 12–inch smear capable of demonstrating Fort's "actual innocence." Fort has not asserted that new technology would render testing of the sample of more value than it was in 1991, or during his trial in 2007. In fact, Fort failed to provide evidence that the sample from the 12–inch smear can be tested at all. Further, during his 2007 trial, Fort had the oppor-

tunity to cross-examine a State expert about the sample in question because the existence of the sample was known at the time of trial and mention of the sample is included in the trial record. Fort's trial counsel cross-examined the forensic scientist who conducted the 1991 testing, but did not raise the issue of the sample from the 12–inch smear. Thus, Fort has already had at least one opportunity to seek the relief he currently requests regarding DNA testing of the sample from the 12–inch smear. Because Fort has not made the minimum assertions required to entitle him to a hearing on his motion for new forensic testing on the sample from the 12–inch smear, we hold that the postconviction court did not abuse its discretion when it denied Fort's motion without an evidentiary hearing.

In sum, Fort has raised two claims in this appeal. He claims the postconviction court erred when it denied his requested relief because the alleged new testimony from A.Z. together with the request for DNA testing on a sample taken from a 12–inch smear warrant an evidentiary hearing. On neither claim has Fort made a sufficient showing that he is entitled relief. Thus, we hold the postconviction court did not abuse its discretion when it denied Fort's petition and motion for relief without a hearing.

Affirmed.