**Jack Willis NISSALKE, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A14–0458.**

Supreme Court of Minnesota.

March 18, 2015.

Rehearing Denied May 20, 2015.

Jack Willis Nissalke, Rush City, MN, pro se.

Lori Swanson, Attorney General, Saint Paul, MN; Karin Leonard Sonneman, Winona County Attorney, Winona, MN; and Thomas E. Gort, Special Assistant Winona County Attorney, Rochester, MN, for respondent.

## OPINION

PAGE, Justice.

In July 2009 appellant Jack Willis Nissalke was convicted of first-degree premeditated murder, in violation of Minn. Stat. § 609.185(a)(1) (2014), for the 1985 murder of Ada Senenfelder. The trial court sentenced Nissalke to life imprisonment without the possibility of release, and we affirmed Nissalke's conviction in *State v. Nissalke*, 801 N.W.2d 82 (Minn.2011). On July 1, 2013, Nissalke filed a pro se petition for postconviction relief raising a sentencing claim, a restitution claim, and several claims of newly discovered evidence and ineffective assistance of counsel. The postconviction court granted relief on Nissalke's sentencing claim, but denied relief on Nissalke's other claims without holding an evidentiary hearing. In this appeal, Nissalke claims that the postconviction court erred when it denied his claims without an evidentiary hearing. Because the petition and the files and records of the proceeding conclusively show that Nissalke is not entitled to the requested relief, we affirm.[1]

The postconviction court must hold an evidentiary hearing on a petition for postconviction relief "[u]nless the peti-

tion and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2014). The petition must allege "more than argumentative assertions without factual support." *Lynch v. State*, 749 N.W.2d 318, 320 (Minn.2008) (citations omitted) (internal quotation marks and alterations omitted). "[A] postconviction court need not hold an evidentiary hearing when a petitioner 'alleges facts that, if true, are legally insufficient to entitle him to the requested relief.'" *Fort v. State*, 829 N.W.2d 78, 82 (Minn.2013) (quoting *Bobo v. State*, 820 N.W.2d 511, 517 (Minn.2012)). We review the denial of postconviction relief for an abuse of discretion. *Davis v. State*, 784 N.W.2d 387, 390 (Minn.2010). A postconviction court abuses its discretion "when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011). We review findings of fact for clear error and questions of law de novo. *Erickson v. State*, 842 N.W.2d 314, 318 (Minn.2014).

## I.

We begin with Nissalke's claims of newly discovered evidence of juror misconduct. A defendant is entitled to an evidentiary hearing on a newly discovered evidence claim if he alleges facts that, if proven by a preponderance of the evidence, would satisfy the four-prong test articulated in *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997), which requires that the new evidence: (1) was not known to the petitioner or his or her counsel at the time of trial; (2) could not have been discovered through due diligence before trial;

---

1. A full discussion of the facts underlying Nissalke's conviction is set forth in our decision on direct appeal. We repeat the facts here only as necessary to address the issues presented in this appeal.

(3) is not cumulative, impeaching, or doubtful; and (4) would probably produce an acquittal or a more favorable result.[2] *Fort*, 829 N.W.2d at 82. Nissalke alleges that after his trial was complete he discovered: (1) a photograph of S.M., a member of the public who had engaged in a conversation with a deliberating juror; and (2) an interview with one of the jurors that purportedly proves that the juror committed misconduct by "speculat[ing] on certain evidence she thought was crucial." For the following reasons, we conclude that even if Nissalke proved the alleged facts by a preponderance of the evidence, he would not satisfy the *Rainer* test.

■ We first consider the newly discovered photograph. During the jury deliberations in Nissalke's trial, it was brought to the trial court's attention that a deliberating juror, while on a break from deliberations, was seen talking outside of the courthouse with S.M., a member of the public. After the jury returned its verdicts finding Nissalke guilty, but before Nissalke's notice of appeal was filed, a *Schwartz* hearing was held to determine if juror misconduct had occurred. *See* Minn. R.Crim. P. 26.03, subd. 20(6); *Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960) (providing procedures for post-verdict hearings on alleged juror misconduct). S.M., a former co-worker of the deliberating juror, testified at the *Schwartz* hearing via telephone that she and the deliberating juror had a brief conversation about S.M.'s recent retirement. The trial court determined that, although the juror had engaged in misconduct, the misconduct was not prejudicial. Nissalke now alleges, based on the photo, that S.M. resembles a

person who was present in the courtroom gallery during Nissalke's trial. Accordingly, Nissalke asserts that, had the trial court known that S.M. resembles someone who Nissalke observed in the courtroom gallery, the trial court would have altered its analysis and concluded that the misconduct was prejudicial. However, even if Nissalke proved by a preponderance of the evidence at a postconviction evidentiary hearing that S.M. resembles someone who Nissalke observed in the courtroom gallery, he would not satisfy the fourth prong of the *Rainer* test because he fails to articulate how this fact adds any relevant new information germane to the trial court's finding that juror misconduct had occurred, but had not resulted in prejudice. Consequently, the newly discovered photograph would not likely have produced a more favorable result. We therefore conclude that, because Nissalke failed to allege facts that, if proven by a preponderance of the evidence, would satisfy the fourth prong of the *Rainer* test, the postconviction court did not err when it summarily denied the newly discovered evidence claim based on the photograph.

■ Next, we consider the juror interview. Nissalke argues that a student interview with one of the jurors from Nissalke's trial establishes juror misconduct. This interview took place on December 11, 2009. During the interview, the juror stated:

> Many times, a witness would say something crucial, but either the plaintiff's or defendant's lawyer would make an objection, and that discussion would have to stop. . . . This withholding of information was frustrating because it prevent-

---

**2.** Nissalke filed his petition for postconviction relief before the expiration of the 2–year statute of limitations set forth in Minn.Stat. § 590.01, subd. 4 (2014). Consequently, he

was not required to satisfy the more onerous newly discovered evidence standard in Minn. Stat. § 590.01, subd. 4(b)(2).

ed [me] from always being able to put the pieces together.

According to Nissalke, the juror's statements prove that the juror committed misconduct by "speculat[ing] on certain evidence she thought was crucial." Nissalke's argument fails. First, we do not agree that the juror's alleged statements prove that the juror committed misconduct. More importantly, the argument fails for a separate reason. Nissalke fails to acknowledge Minn. R. Evid. 606(b), which prohibits the admission of any testimony, affidavits, or other evidence regarding the "effect of anything" on a "juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith," except in three situations that are not applicable here.[3] Because the juror interview would have been inadmissible at a postconviction evidentiary hearing, the postconviction court did not err when it summarily denied the claim of newly discovered evidence of juror misconduct based on the interview.

## II.

■■■ We next address Nissalke's claim that he is entitled to a reduction in the restitution he is required to pay. Minnesota Statutes § 611A.04, subd. 1 (2014), provides that victims of crimes are permitted to request restitution as a part of the disposition of a criminal charge against the offender if the offender is convicted or found delinquent. Here, the trial court concluded that Nissalke was responsible for paying $2,212.65 in restitution. Nissalke argues that "fairness and equal protection should provide that this financial

burden be equally divided between the three defendants charged with this crime."

Nissalke's argument fails to acknowledge *State v. Johnson,* in which we held that district courts have the authority to order restitution based on joint and several liability when multiple defendants contribute to a victim's loss. 851 N.W.2d 60, 66 (Minn.2014). In light of *Johnson,* the petition and the files and records of the proceeding conclusively show that Nissalke is entitled to no relief on his restitution claim. Consequently, the postconviction court did not err when it summarily denied Nissalke's restitution claim.

## III.

■■■ Nissalke also argues that his trial and appellate counsel were ineffective. If a claim of ineffective assistance of trial counsel can be determined on the basis of the trial record, the claim must be brought on direct appeal or it is *Knaffla*-barred. *Sanchez–Diaz v. State,* 758 N.W.2d 843, 847 (Minn.2008); *Torres v. State,* 688 N.W.2d 569, 572 (Minn.2004). If, however, such a claim requires examination of evidence outside the trial record or additional fact-finding by the postconviction court, such a claim is not *Knaffla*-barred because the claim is not based solely on the briefs and trial court transcript. *Robinson v. State,* 567 N.W.2d 491, 494–95 (Minn.1997). To be entitled to an evidentiary hearing on an ineffective-assistance-of-counsel claim, an appellant must "allege facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong test announced in *Strickland v. Washington,* 466 U.S. 668, 687 [104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]." *Bobo v. State,* 820

---

**3.** Rule 606(b) allows a juror to testify on the questions of: (1) "whether extraneous prejudicial information was improperly brought to the jury's attention"; (2) "whether any outside influence was improperly brought to bear upon any juror"; or (3) "as to any threats of violence or violent acts brought to bear on jurors, from whatever source, to reach a verdict." Minn. R. Evid. 606(b).

N.W.2d 511, 516 (Minn.2012). To establish a claim under *Strickland,* an appellant must prove: (1) that his counsel's representation "fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052. We may dispose of a claim on one prong without considering the other. *Jackson v. State,* 817 N.W.2d 717, 722 (Minn.2012).

## A.

█ With respect to his trial counsel, Nissalke first claims that his trial counsel failed to adequately investigate and prepare for trial and was hindered by the use of cocaine. Each of these claims was raised and rejected on direct appeal. *See Nissalke,* 801 N.W.2d at 111. Thus, the claims are procedurally barred under *Knaffla.* *See State v. Knaffla,* 309 Minn. 246, 243 N.W.2d 737 (1976).

█ Nissalke claims that his trial counsel failed to properly explain a plea offer that was memorialized in an April 24, 2009, letter. The letter stated that if Nissalke was convicted of first-degree murder "seventeen years would be the minimal actual time your client would serve in prison. He could potentially remain in prison, however-

er, for the balance of his life." The letter further indicated that if Nissalke could maintain a clean behavioral record while in prison, the State would not oppose any parole request after 5 years, and would support a parole request after 10 years. Nissalke alleges that he rejected the plea offer because he believed "a life sentence in Minnesota was 18 years, [and] of that he would do 12 years in prison and 6 years on parole," and that had he known he was facing the possibility of life in prison, he would have accepted the plea offer. As factual support for this allegation, Nissalke relies on a jailhouse call during which Nissalke told his wife he believed he would be "getting 18 years, serving 12." Because the factual support for the claim that trial counsel failed to properly explain the plea offer was part of the trial record, Nissalke was required to raise the claim on direct appeal and his failure to do so triggered the *Knaffla* bar.[4] Consequently, the postconviction court did not err when it summarily denied Nissalke's claim that his trial counsel failed to properly explain the plea offer.

## B.

█ With respect to his appellate counsel, Nissalke argues that his appellate counsel failed to obtain and provide discovery for his direct appeal. To support this claim, Nissalke points to a conversation he

4. We have previously recognized two exceptions to the *Knaffla* bar that excuse a defendant's failure to raise a claim on direct appeal: (1) the claim is so novel that its legal basis was not reasonably available to counsel when the direct appeal was taken and decided; or (2) if fairness so requires and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. *Roby v. State,* 531 N.W.2d 482, 484 (Minn. 1995); *Case v. State,* 364 N.W.2d 797, 801 (Minn.1985) (Wahl, J., concurring specially). After a careful review of the record before us, we conclude that neither exception applies in Nissalke's case. Having concluded that nei-

ther *Knaffla* exception applies, we need not address the issue of whether the *Knaffla* exceptions survive the 2005 amendments to Minn.Stat. § 590.01, subd. 1, which states that "[a] petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." *See, e.g., Berkovitz v. State,* 826 N.W.2d 203, 210 n. 3 (Minn.2013) (concluding that we need not decide "whether the exceptions to the *Knaffla* rule survive the 2005 amendments to the postconviction statute" because the petitioner's claims were clearly procedurally barred).

had with his appellate counsel in which his counsel stated that he would not be requesting discovery because the rules of criminal procedure would prevent the use of any information on direct appeal that was not a part of the trial record. Appellate counsel was correct. Minnesota Rule of Criminal Procedure 28.02, subdivision 8, provides that "[t]he record on appeal consists of the papers filed in the district court, the offered exhibits, and the transcripts of the proceedings, if any." Thus, any information obtained by such discovery would not be a part of the record on appeal and therefore would not be available for use on direct appeal. Consequently, we conclude that appellate counsel's performance did not fall below an objective standard of reasonableness, as the *Strickland* test requires. Having failed to meet the first prong of *Strickland,* the claim fails.

Next, Nissalke contends that his appellate counsel was ineffective because he refused to stay Nissalke's appeal to develop the necessary record to establish a claim for ineffective assistance of trial counsel. As discussed above, there was no need for appellate counsel to develop the record regarding the rejected plea offer because the factual basis for the claim—the contents of the jailhouse call—was a part of the trial record. Moreover, Nissalke's claim of ineffective appellate counsel based on a failure to assert a claim for ineffective assistance of trial counsel fails because on direct appeal we concluded that Nissalke's trial counsel was not ineffective. 801 N.W.2d at 111–12. *See Vance v. State,* 752 N.W.2d 509, 514 (Minn.2008) ("When a petitioner bases his ineffective-assistance-of-appellate-counsel claim on appellate counsel's failure to raise an ineffective-assistance-of-trial-counsel claim, he first must show that trial counsel was ineffective."). Therefore, the postconviction court did not err when it denied Nissalke's appellate counsel claims without a hearing.

## IV.

Finally, with respect to Nissalke's remaining claims involving a possible *Brady* violation, prosecutorial misconduct, and newly discovered evidence that calls into question several of the witnesses at trial, we have carefully examined the record and we conclude that each of the claims was either known to him or should have been known to him at the time of his direct appeal and is therefore procedurally barred or is without merit. To the extent that the claims are procedurally barred, we note that no exception applies. Therefore, we hold that the postconviction court did not err when it summarily denied Nissalke's petition.

Affirmed.